May it please the Court, Counsel. For the purpose of the argument today, I would like to focus on the first two issues raised in the brief. With regards to the first one, the police did not have probable cause to arrest and search Mr. Burns, and when they did, the fruits of that arrest should have been suppressed, including the cocaine, the gun, and the knowledge that he did not have a Floyd card. The reason they did not have probable cause here is they had nothing in particular illegal to tie to Mr. Burns before they saw the gun, and when they saw the gun, they did not take the proper steps to make sure that gun was illegal. So starting at the beginning here, we have officers who are surveilling Mr. Montgomery. They have information that Mr. Montgomery has been involved in narcotics sales. I think there was a team of 68 cars following him, trading off. Anyway, so Mr. Burns gets in the car at some point, and about 20 minutes later, less than 20 minutes later, officers Leach and Western pull Mr. Montgomery over because he did not use his turn signal in the proper amount of time. When they got to the car, they said that they smelled the odor of marijuana. At this point, the officers have nothing to tie this alleged wrongdoing to Mr. Burns. They have a belief that Mr. Montgomery has committed a traffic violation, that Mr. Montgomery is involved in narcotics sales, and that his car has the smell of marijuana in it. But there was absolutely no testimony in all the time that they were surveilling that anyone was smoking marijuana in this car. So to be in the presence of lingering odor of marijuana is not a crime, and I think since there was nothing to specifically tie that to Mr. Burns, they did not have probable cause at that point. Now, they ordered him out of the car, which was their right, and they, you know, I think they read their names and they came back, and I think Officer Leach testified that after he took him out of the car and was walking him back, that Mr. Burns was still free to leave. Now, I think that's significant. I don't think that's determinative, but I think that's significant, because even the officer at that point didn't believe that all of these things the state now claims add to probable cause or support probable cause. Didn't, because what was all this wrongdoing? It was all tied to Mr. Montgomery, nothing specific tied to Mr. Burns. So when they see the gun, it's at that point that they arrest and search his front pocket and find the cocaine. Now, why is that wrong? Well, the law's changed. It is a fundamental constitutional right to carry a handgun for self-defense outside the home. Doesn't mean there's not restrictions on that, but that's the starting point here. This is a fundamental constitutional right, so that can alone serve as a basis to arrest someone. Are you talking about concealed carry? Yes, Your Honor. Well, I'm talking about Aguilar. The holding of people via Aguilar was you have a fundamental constitutional right to carry a loaded handgun outside the home for self-defense. That was codified by the legislature with the concealed carry. What is the age for concealed carry? It's 21, I believe. And your client was? He was 20. So in terms of officer safety, when they see a gun, can't they secure it? Yes, I totally can see that. Yes. But they didn't do that in this case. They proceeded directly to an arrest. And I think that is. Well, was this concealed carry or open carry? Well, I think it was partially concealed in his back pocket. And so I think if you look at People v. Thomas, which is cited in the reply brief, that's part of concealed carry. I mean, you know, People v. Thomas says, you know, the law has changed. No longer can officers view, I think they say, view a partially protruding gun in a pocket, see arrest, and then determine licensure later. And I think to hold him otherwise, we basically need to relegate gun owners to be second-class citizens as far as the Fourth Amendment is concerned. Oh, we're just going to arrest and search everyone who we can tell maybe has got a gun. And then if we find something, fine, if he has the proper permit, we'll let him go. No, that's not what the Fourth Amendment. You have to follow the proper procedure. And here they didn't do that. Wasn't there enough for a carry step when you see the gun? Yes, exactly, Your Honor. I can see that there was enough for a carry step. And I think if you look at the concealed carry, it says officer may request the proper license, you know, to see if they have the proper permit. I think it would have been entirely appropriate to secure the gun and then go determine whether he had that. But that's not what happened. They saw the gun, seized it, arrested him, and then searched his front pocket. So I believe, yes, I would say that there was enough for a carry step. There was not enough probable cause for an arrest here and a search. And so, you know, I don't know that I think that that is the main problem here. I mean, all the other stuff that the state has cited supporting probable cause, like I said, all tied to Mr. Montgomery, and I don't think really would have justified this arrest and search. You know, and like you said, Terry, I mean, if you look at Houghton, which is cited by the state, they discussed the difference between Terry and also, you know, Pat Down and then also searching the car. And then actually when you search a person, you know, it's a very much more intrusion on someone's personal liberty. And there was not probable cause in this case to support that arrest and search. And as far as the age, that's never been put forth as a basis. I agree. So if there are no more questions on that, I would move on to issue two. So the question for issue two is, was this a stipulated bench trial that was tantamount to a guilty plea requiring 402 admissions? I think it's clear from the entire record, the intentional parties, that this was tantamount to a guilty plea. One of the first reasons that you can tell that is that the judge gave partial 402 admonishments, which I think when people read Westerfield, they cite it as, kind of shows you this is tantamount to a guilty plea or else why are we doing this? The crucial fact here is that the judge asked, are you stipulating this evidence to the evidence or are you stipulating that the evidence is sufficient to convict? He said, sufficient to convict. The State's main argument is that there was a recess and then that's when they started the stipulated bench trial. I don't think this recess really takes away from what we have here, which was stipulation that the evidence was going to be sufficient to convict. And if you look at what happened during the presentation of the evidence, the defense counsel stipulated to the cocaine, the gun, and the flack of a Floyd card and said, I'm stipulating to those exhibits that are necessary to prove the charge, I believe. So I don't think there's any question here that both of these statements by defense counsel was that this was tantamount to a guilty plea. The main case the State relies on is People v. Horton, in which there was two stipulated bench trials, one which was considered tantamount to a guilty plea and one which wasn't. And the main thing in Horton was the one that was considered not tantamount to a guilty plea was there was no statement that he was stipulated to the sufficiency of the evidence to convict. There was a statement in closing argument he wasn't contesting, but they kind of looked at this in Horton, the other one where they said it was tantamount to a guilty plea. They used the magic word stipulate, which is what we have in this case. I think the other thing about Horton that's different is in Horton they presented a witness. There was cross-examination. There was closing argument. And in fact, in Horton, defense on appeal also made an argument that counsel violated chronic and hattery by not subjecting the State's case to meaningful adversarial testing. And the Supreme Court said, no, they did subject the State's case to meaningful adversarial testing. By cross-examining the witness, by questioning the reliability of the identification. So there is no way to say in this case that this was subjected to meaningful adversarial testing. It's like basically like people v. Stephanie where if it's clear from the intent of the parties that this was the outcome of the foregone conclusion, it's a stipulated bench trial tantamount to a guilty plea. And that's exactly what we have here. You know, he said, with the cooperation of the State's attorney, I'm going to enter into a stipulated bench trial. I have a question for you. Sure. Didn't they also stipulate or tell the judge? They stipulated the judge could consider the evidence he heard during the trial of Mr. Montgomery? There was that portion too. Yes, Your Honor. And it was the same judge. Judge Corey did Montgomery's trial and Judge Corey did this trial. Yes, Your Honor. Did you know? Yes. I believe so. I think so. Do you know what the outcome of Mr. Montgomery's trial was? I believe Mr. Montgomery was acquitted. He was? Yes. So if you're stipulating to the evidence of a co-defendant who was acquitted. But that was completely different evidence. And, you know, Mr. Montgomery was charged with the contents of the backpack. I understand. But there's no slam dunk decision based on that stipulation. Judge Corey is still free to make up his mind, I think. Granted. Tell me why he disappeared. Well, because in this case, that was part of it. But he stipulated to the cocaine, the gun, and the lack of a FOIA card found on Mr. Burns, which had nothing to do with Mr. Montgomery's trial. He stipulated, I would stipulate to those facts necessary to prove this charge. So I think that. Why was it necessary to include that? I don't know why the parties did that. I mean, I don't think that changes anything, though. Well, I think then, I mean, to say then that this is not tantamount to a guilty plea, I think would be a pretty unfair ruling. The reason we require 402 admonishments is to make sure that a defendant is aware of everything that he is waiting. Now, when your attorney says, I'm stipulating this evidence is sufficient to convict, then he stipulates these specific items. He also stipulated they were found on Mr. Burns and that they were, you know. At that point, what happened in another trial on different evidence, I don't think there was any chance that Mr. Burns was going to be acquitted based on what happened in Mr. Montgomery's trial. And to say that then. We don't know if Judge Corey just found the officers with lacked credibility. We don't know. That part of the record isn't before us. We don't know why Judge Corey acquitted. Well, but I think the crucial thing here is, did he stipulate the evidence was sufficient to convict? And he did. His attorney did. So I think at that point, you know, that's when these protections for the defendant should kick in. I mean, was the outcome of this a foregone conclusion? I mean, I think it was when he's saying, I stipulate, you know. Whatever happened in Mr. Montgomery's trial was completely different evidence, completely different facts. What he stipulated to in this trial was the facts necessary for Mr. Burns to be convicted. So I think to hold then that, you know, oh, now the judge didn't have to warn him of the rights he was waiting. And also, if you look at why did the judge give partial 402 admonishments? I think it's because everyone here knew this was tantamount to a guilty plea. Like I said, people view Westerfield. That's one factor they looked at. And in Westerfield, they didn't properly, you know, didn't properly give him, but they did give him. So I think if counsel was hoping for an acquittal, he did, you know, he should have not stipulated to the evidence in this case. Maybe if he would have just said, you know, we're not stipulating this evidence, but we'll stipulate to what testimony in Mr. Montgomery's case, we might have a different scenario, but. Counsel, you have two minutes. Okay. Well, with regards to the rest of that issue, I would just say that I do not believe that if we are construing this as tantamount to a guilty plea, that there was compliance with Rule 402 when he was never informed that he had a right to persist in a plea if not guilty. And then the judge made it seem like his prior jury waiver, which was made with regards to going for a bench trial, was irrevocable. He said, well, you've already waived your right to a jury trial, which if you look at Campbell, that is not sufficient. You have to tell them that at the time that you were entering into this guilty plea, you have the right to actually plead not guilty, to go to trial, to have a jury trial or a bench trial, and the rest of those rights. And that clearly did not happen in this case. There was no, I don't think there was compliance. The state says that there was no need to tell him that he had the right to persist in a plea of not guilty because he didn't plead guilty. But I think this is like Porter and all the cases cited in my brief. When it's tantamount to a guilty plea, then you have to go ahead and comply with 402. And that was not, that did not happen in this case. If there are no further questions, I will take the rest of the time. Mr. Atwood. Good afternoon, Your Honors. Counsel. May it please the Court. My name is Nicholas Atwood and I represent the people of the state of Illinois in this matter. I'd like to begin by just addressing the second issue that counsel discussed with regard to the stipulated bench trial. I think it's very clear here that we have two completely separate proceedings. All the language that counsel cites with regard to stipulating to the sufficiency of the evidence happened during what was essentially a scheduling conference that occurred prior to a recess and before the official trial commenced. And it was at that scheduling conference that counsel made that statement. And he did say, oh, we will stipulate to the sufficiency of the evidence, which would clearly implicate 402 admonishments. However, he also told them that he wanted to discuss this matter with his client. They weren't certain that they were going to proceed with a bench trial, a stipulated bench trial, but they were going to take this lunch break, the parties were going to come back, and then they were going to commence with the bench trial. And that's exactly what happened. And once the Court called the parties into order and commenced the bench trial, as the Justice noted, the Court asked, do you stipulate that I consider this evidence? Which is, of course, what is required for a stipulated bench trial. And counsel said, yes, we do. During the formal trial proceeding, he never stipulated that the evidence was sufficient to convict. He did what is required to complete a stipulated bench trial and says, I stipulate that you consider this evidence as well as the evidence that was presented in Montgomery's trial. Based on that language alone, there's no need for 402 admonishments. With regard to the judge giving 402 admonishments, I don't think that evinces anything other than an abundance of caution. As we often see, these 402 issues come up constantly, and these stipulated bench trials often hinge on the parsing of words that go on between the parties. And I think it's probably fair to consider that some judges will go ahead and provide those admonishments just as an assurance. But he didn't do that here. No, he didn't do those right either. So I think that just exemplifies what we have here. This is constantly being mistaken in the trial court level. So how much time has to pass before your waiting period ends? End of the morning, prior beginning of the afternoon? A snap of a finger would be enough time because we don't need to have a set grace period to make this determination. Black's law defines a trial, and it specifically uses the word formal. Counsel says there's no need for this formality in his reply brief, but the definition for trial is that it is a formal judicial examination of evidence and a determination of legal claims in an adversary proceeding. So when the court calls them into order and says we're going to commence the bench trial, if ten seconds earlier or one second earlier they were talking about something completely different or perhaps another case had been called, that's a sufficient amount of time because the court has called the parties to order. He is engaged in the formal proceeding that is the stipulated bench trial and not the off-the-cuff remarks that the parties are engaged in as they're attempting to schedule. Are we going to do the stipulated bench trial next week? Can we do it today? Certainly that cannot be something that can be held against defense counsel in a formal proceeding. That would be, you know, what if counsel had said that and then like actually we're going to have a regular bench trial? Would they use that as evidence against him as a formal admission to the crimes? Of course not because that's not the proceeding, and all the parties knew that's not the proceeding. They were simply getting their ducks in a row so that they could proceed with the stipulated bench trial. With regard to the adversarial nature, Your Honors have mentioned that. I think by stipulating the evidence that was presented, we're really, with a legal, with a stipulated bench trial we're really dealing with almost a legal fiction here because all the parties recognized he had possession of these items after the probable cause determination had been made. The motion to suppress was denied. The whole case hinges on the motion to suppress, and there were two separate motion to suppress hearings. It was run through the gamut of the adversarial procedure. We're not concerned with the after effect because if he wins on the motion to suppress, all the rest of it is irrelevant. And that was the adversarial proceeding. So the stipulated bench trial, as is often the case, was simply used to preserve errors. And in this case, we had a proper, almost a textbook stipulated bench trial because the court asked him directly, are you stipulating that I consider the evidence? I think he said it twice. And counsel responded yes both times. There's no error there. There's no error whatsoever there. We argued alternatively that even if you found that that was an error, if you somehow attributed those prior statements and determined that even though they conflicted with what happened at the bench trial that that would be meritorious, there is a substantial compliance rule with 402. We don't have to have strict compliance like Rule 604D. It's substantial. And what happened in this record, we got most of it. We got the sentencing. We got most of it. We didn't get the right to a jury trial and the right to persist in a plea. But the case law is clear in a 402 situation. You can consider the entire record. And in the entire record, it's clear the defendant maintained his innocence. He persisted in that not guilty plea. Rule 402 admonishments are designated for guilty pleas. We didn't have a guilty plea here. It's different than the cases that counsel cited. Specifically, I think it's Campbell. Campbell has to do with the jury waiver, but it was Mitchell, I think. And there was a written guilty plea that was entered into that case. And then he filed a motion to withdraw. And so later on, it wasn't immediately apparent to the defendant, or at least this Court believed it wasn't immediately apparent, that he knew he could still have a jury trial. We didn't have that in this case because there was never a guilty plea filed and counsel maintained his innocence throughout. He persisted in that plea. So to argue that he didn't satisfy the purpose of 402, which is to make sure that you understand these rights that you're giving up, it makes no sense because he persisted in his not guilty plea. So he must have known. The same is true with the jury trial. He waived the jury one day earlier in a written jury waiver. And then earlier in the same proceedings, the Court asked the defendant about the jury trial, and the defendant indicated that he understood that he was waiving that right. So it's very clear that we have a proper stipulated bench trial and we have a defendant who absolutely knows what his rights are. There's no evidence to the contrary in the record. And I think on that basis, I'd ask the Court to affirm. With regard to the motion to suppress in the probable cause determination, counsel's trying to look at each one of these facts in a vacuum. And these individual facts that are established, regardless of what the officers testified to, like, oh, he wasn't under arrest when we removed him from the vehicle, each fact established a chain that linked the totality of the circumstances to the probable cause determination. We know for a fact that the officers observed Mr. Montgomery complete two controlled drug buys over the course of that same day. The defendant enters the vehicle. The officers observed one or two traffic violations. They decide they're going to pull over the vehicle. They pull over the vehicle. One of the officers notices furtive movements on the part of the defendant. It looks like he's leaning out in front of him. He's messing with something, perhaps trying to conceal something. They notice that before they get to the vehicle. Next, they get to the vehicle. The window gets rolled down. Instantly, we smell cannabis. So there's some discrepancy. Do we smell raw cannabis or burnt cannabis or maybe both? It's unclear because in one of the hearings, the officer said burnt cannabis or raw cannabis, and then in a subsequent hearing, he testified certainly that it was burnt cannabis. So if it was burnt cannabis, he would automatically have a right to check because this isn't a situation where, you know, this is a lingering odor maybe from some other place. Like, he was in the vehicle with the defendant. It's possible that they were both consuming, or with Montgomery, it's possible they were both consuming cannabis. But with the raw cannabis, like, that's sufficient to search the vehicle at least. So we know we can search the vehicle. When we search the vehicle, what do we see in front of the defendant's seat? The backpack. The backpack that contains loose ammunition, a gun, and I think raw cannabis as well as a blunt. And so the presence of the blunt creates a reasonable inference that perhaps they were smoking it. We don't know if it was burned or not, but there was at least marijuana that could be consumed, not simply in a raw form. But because that stuff was in the backpack, directly in front of the defendant, who the officer had already testified, I saw him making furtive movements as if he was manipulating something down there. We've linked each part of the chain in the totality of the circumstances to the bag. And now that's when we argue it would be inevitable that the defendant, his person would be searched because him messing with that bag connected him to that bag. He is linked inextricably to that bag because the officer observed those furtive movements. And as a result, before we ever even get to the officer's observation of the handgun, we've got probable cause to search the defendant, whether the officer testified to that or not, because these are the facts that we have today. Now, however, Justice Wright, I believe, mentioned about officer safety. When this defendant gets out, oh, it also should be noted, the name he gave to the officers did not check out in whatever system that they ran it in. In the brief I made, I mentioned that the state police have offered a database of FOIA card holders to the police. They have this information available. Counsel said that they ran a lead search. I do not recall in the record whether it was a lead search or whether it was just they said they ran it through the system. We don't have a record at our office of this any longer, so I couldn't find it when I went to look. I don't think it's dispositive anyway because, again, this name doesn't return in the system. That's suspicious in and of itself to look further into the defendant. However, he gets out of the vehicle and then the officer observes the gun. So we've got an officer who knows that criminal activity has been occurring. He knows that this individual gave him a fake name. And then he sees a handgun. Of course he has to take the handgun off the guy in search. Because who wouldn't in that, in any situation where you're interacting. I don't think the fact that the guy wasn't in the system means he gave a fake name. It just means he gave a name that wasn't in the system. Doesn't it? Well, this information, I don't know that, I don't know that you could not be in the system if you have a driver's license or any ID. He wasn't driving. No, he wasn't, but his name wasn't present. So I think a reasonable police officer could find that suspicious. Bobby Burns is not an unusual name. There should be a Bobby Burns in the system. It's not as if this was a name that the officer probably misspelled in some other situation. I'm sorry. The writer is saying that the name, because the name is a familiar one. I'm saying that it should be in the writer, in the name. No, I'm saying that system is an extensive system. I don't know that you could find an adult in the state of Illinois who would not return an address of some form. It's not just a system that contains criminal information. It's a wide variety of information that's contained in there. I'm saying it would be reasonable to say that, okay, this common name isn't showing up. Perhaps this person has given me a false name. It's not dispositive, but it's something that could go towards what the officer's thinking. Anybody who lives in Chicago that doesn't have a driver's license in the criminal district probably wouldn't come back. But I appreciate your argument. I understand that. But as I said, it's not dispositive of the issue. It's really just kind of pouring it on, essentially, because we have the probable cause based on all the facts leading up to the officer seeing the gun. And I think certainly the officer has a right to disarm this individual once he sees the gun, because it's very unusual if someone's carrying a weapon to not let the officer know. And I recognize that they're not required to say they have a gun, but I think a normal person under these circumstances would say something when they're being asked to get out of the vehicle simply because they wouldn't want to let the officer, you know, believe that there was some alternative intention. And I think it's also important, aside from Aguilar and the right for people to possess weapons outside the home, nobody has a right to possess a weapon that's committing crime. And the officers know that crimes have been committed, and they've seen this Montgomery completing controlled buys, and they've seen the defendant associated with him. I think when you look at all of that, a reasonable officer would believe, okay, this guy might be involved with something here. He's got this gun. And then they searched him after the fact. But I think it's all, all the information happened before the gun was seen. That was sufficient to establish probable cause. Thank you. One of the other things I argued about that also was even if all this is, even if the officers are wrong, that the good faith exception should apply. And I believe in his reply brief, counsel said that the good faith exception didn't apply because this was not one of the enumerated factors that the good faith exception applies to. And I would direct the court to People v. La Florence, a 2015 Illinois Supreme Court case, 2015 IL 116799. That case specifically talks about all the various scenarios in which the good faith exception can be implicated. And it doesn't have to be simply due to a bad warrant. It doesn't have to be simply due to a misunderstanding of precedent. It can come up in a variety of different ways. And I think it comes up in this situation because the officers have this knowledge of all these different factors that are reaching probable cause. And then they see this gun. Even if they didn't realize that he had a right to possess this gun or that they couldn't search him simply by seeing the gun, all those factors leading up to a created a good faith exception. Because the officers, you know, they were clearly surprised when they saw it. You know, one of the officers testified that he said gun. And then reacted. I think that's a fair situation, especially when you're getting ready to perform a search of the vehicle. What if you find something and you didn't disarm this person? It creates a dangerous precedent for police officers. So I think it was inevitable that they were going to do that. Sure. No, I did not say that because I don't think they knew. The thing that I said in the brief is that they said they ran his information through the system. And because the system has available Floyd card holders that if they had run his name through, they could have known, they would have known that he didn't have one because his name didn't return anything. They just ran his name through the system. The rest of it is simply inferences that could be drawn from the running of the information. Briefly, I would address the as applied constitutional challenge. After they went up the first time and the windows were rolled down and they smelled the cannabis, they got the information then and one of the officers went back and ran the information. I don't know what the other officer was doing at that time, but it occurred after the furtive movements after the odor of cannabis, but before the handgun at some point, before the defendant got out of the car. Correct. Yeah. Before the defendant even exits, where you're not in the system, get out. Yeah. Something along those lines. And they indicated that they wanted to, they knew they were going to search the vehicle and then go from there. Briefly with regard to the as applied constitutional challenge. One of the things that I would note, defendant sites, people beat house the second house opinion that this sort of seems to be in contravention with Harris. I would know this court that case is now pending appeal. They have not determined whether they're going to take that appeal or not. I looked it up today. So I would discount the house case to the extent that it disagrees with people be Harris and people be buffer. I would also know that the sentence the defendant received was the minimum sentence in this case, 15 years of which he'll serve 50%. We can, we confessed to that issue in issue four. So he's got a seven and a half year sentence, buffer Miller, Harris house, all these cases deal with the fact of life sentences, which are 40 years or more as applied to juveniles. What we have here is a 20 year old with a 15 year sentence, which is a mandatory minimum that he'll essentially serve seven and a half years of. I would also note that this court and people being the key rejected the attempt by a defendant to try to bootstrap a Miller Harris argument into the appeal process. When he never presented any evidence regarding his brain development in the trial court level. If there's no evidence for the court to consider, it would essentially be sending it back for a resentencing hearing with no basis at all to determine whether or not this defendant would actually have that advantage. There are no further questions. The people would ask that this court affirmed the defendant's conviction in sentence. Thank you. With regards to the 402 admonishments, I would like to reiterate that it wasn't just what was stated before. It was also during the stipulated bench trial, the state argues is the only portion that matters. He said, I will stipulate to these exhibits necessary to prove the charge. I think that's pretty clear. And I think you have to look at what is the purpose of 402 admonishments in a stipulated bench trial is so that the defendant knows these important fundamental constitutional rights. He's waving. This is a pretty fine distinction for someone like Mr. Burns, who has never been in court as far as I know, I've never been in court before. He somehow has to figure out my attorney saying evidence is sufficient to convict. And he's saying these, I'm stipulated and somehow Mr. Burns doesn't need to know the rights he's waving because of these very somewhat hard to parse distinctions between when it was said and what, you know, I think this is where it gets back to people who Stephanie, that this was a clear intention of the parties. This is a tantamount to a guilty plea. So for those reasons, I think 402 admonishments were required. And I don't think there's really any argument that they were complying with in this case. Now the state with regards to the first issue again, the state was talking about this bag. That bag was not discovered until after they had arrested and searched probable cause must be based on the knowledge and information officers have at the time that they arrest or search. So the state's trying to link this back through an edible discovery, but I don't think an edible discovery applies to this bag because the state believed this bag belonged to Mr. Montgomery. They believe they could prove beyond a reasonable doubt that it was Mr. Montgomery's bag. So I don't think it's inevitable that they would have searched and arrested. Mr. Burns based on a bag that they believe belonged to Mr. Montgomery. That's not, I don't think that's how the devil's discovery works. So, you know, and I think just to briefly say that, you know, I don't know what this system, he said he ran his name, the state's saying somehow that's proof that the officers knew he didn't have a Floyd or a concealed carry. Well, the concealed carry database had just been for, I don't even know how much it's up and running and we don't really even know what they did. As far as I know, they just found out he had no warrants because I don't think Mr. Burns had ever had any outstanding warrants, but that was no, there was no basis below that any of this was based on the information they obtained or the lack of information they obtained from when they ran their names. So I don't think the search can be justified in any basis on something that's never been proffered before the appeal. And so for those reasons, I didn't almost conceded that points that he was just keeping it on. So as far as Okay. I mean, I just, you know, and I, like I said, I don't think the bag, okay. Sure. Sure. Sure. So I think just talk about quickly, you know, I think all this evidence until they found the gun basically pointed to Mr. Montgomery, which was why officer Leach said he was free to leave until he saw the gun and the gut, the statute, the constitution demands more. You can no longer just see a gun in an arrest. Yes, you can secure that gun for officer safety. That's not what I'm arguing, but I'm arguing what you can't do is proceed directly to an arrest to do. So I would basically relegate, like I said, gun owners to second class citizens, as far as the fourth amendment is concerned and our constitution demands more. Thank you very much. One housekeeping question for you. Brief indicates that it's this in the caption that it's a judge. Do a fan. Is there, can you just let us know whether that's true or untrue? Like we're reviewing judge Corey's work here. Oh, um, I, you know, I apologize. I'm not sure. Uh, just let us know. Um, after the fact in the caption on the brief is different. Okay. I don't, you know, sometimes I, I don't know. Okay. Thank you very much. Thank you. And thank you.   I'm not going to be short recess. Okay. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.